## The Mississippi Marine and Fire Insurance Company *v.* The Bank of Louisiana.

An action before the Commercial Court to annul a sale made by the sheriff of a District Court, and exception that the former court cannot annul, or set aside the proceedings of the latter : *Held*, that so far as the judicial proceedings of the latter are concerned, the Commercial Court is without jurisdiction ; but where the executory proceedings of a sheriff are set up by defendants as the basis of their title, they may be examined, and set aside if illegal.

Where the notice of seizure under a *fi. fa.* is illegal, the sale will be set aside.

Appeal from the Commercial Court of New Orleans, *Watts*, J. The defendants having obtained a judgment against the plaintiffs, in the District Court of the First District, on a note secured by the pledge of certain shares of the stock in the Bank of Louisiana, caused the same to be seized and sold by the sheriff, and, through an agent, became the purchasers thereof. The present action was instituted before the Commercial Court. The petitioners pray that the sale may be declared void, and that they may be declared the owners of the things sold. The material facts disclosed by the pleadings and evidence, are recited in the opinion delivered by Garland, J.

*Lockett* and *Micou*, for the appellants. The judge of the Commercial Court and the counsel for the defence insist that Chas. Harrod was the *last* president of the Insurance Company, and that service upon him was therefore good. *Non sequitur.* Service must be made on the president, *in office at the time of service.*

It is not true that Harrod was the last president. The minutes of Nov. 29, 1838, contain his formal resignation, and the appointment of Lockett as his successor, *pro tem.* On the 21st January, 1839, Lockett's functions were continued, by resolution ; and on the 13th May, 1839, the liquidation of the company was placed under the control of the *president* and *two directors*, Lockett then being the president. At the meeting to resolve upon the liquidation, the Bank of Louisiana appeared as a stockholder, through H. C. Cammack, its attorney in fact. The functions of the president were not suspended. The only change made was, that a committee of the board was named to advise with him, instead of a full board. The president remained the

head of the corporation, and the only person competent to act as its officer. He was so named with the concurrence and consent of the Bank of Louisiana as a stock holder of the Insurance Company, and so recognized in their judicial proceedings. The other members of the committee had no other powers or functions but those of directors. Consequently no legal service of judicial process, or notice, could be made upon them.

In all the proceedings in the District Court, before the sale complained of, Lockett was recognized as the president; and, in that capacity, he executed the note and pledge on which the suit was based. Can the bank, after thus transacting with a person known to them as the chief officer of the company, pass over him, and, in a most important proceeding, serve notice upon some other? It is not even shown that notice came to the hands of C. Harrod. The sheriff says only, that he delivered it to Mr. Heyl. It is proved that Heyl was *not* an officer of the company ; that he was a clerk at the Atchafalaya Bank ; that the Mississippi Insurance Company had no office there ; and finally, that he had no recollection of ever seeing the notice in question, or of delivering it to Harrod.

The judge of the Commercial Court says that the receipt of the notice ought to have been negatived on oath. If such a suggestion had been made on the trial, the company would certainly have tendered the affidavits of Lockett and Harrod ; but it is obvious, that they could not have been witnesses for the plaintiffs, if objected to, being stock holders of the company. The bank might have called upon them, and ought to have done so, as it held the affirmative in the attempt to cure a service, illegal on its face.

The Code of Practice requires that three days' notice of a seizure be given to the defendant, before advertisement. The mode of giving notice is not fixed. It must be decided by analogy. Citation can only be served upon the president in person, or upon some other officer *at the office of the corporation.* Notice of seizure and intention to sell, must be given in the same manner. Code of Pract. art. 198.

It is objected that it was not necessary to give notice, because the stock was already pledged for the debt.

It was decided in *Grant and Olden* v. *Walden* (6 La. 623), that the three days' notice was necessary in cases of seizure and sale of property specially mortgaged for the debt. This decision was affirmed in the case of *Saillard* v. *White* (14 La. 84), and has ever since been acted upon as the law. Parties interested have a right to expect a compliance with this form, and it would be unjust to deprive them of its advantages. The necessity of notice is greater in cases of pledge than of mortgage. In the latter, the property being in possession of the debtor, the very act of taking it out of his possession, gives him notice of the seizure. In cases of pledge, the property being in the hands of the creditor, he may place it in the sheriff's hands and cause it to be sold, *without the knowledge of the owner*, unless required to give him notice. Thus the most injurious sacrifices might occur. This case is a signal instance, in which the property of a debtor has been sacrificed, and purchased by the creditor for less than *one-third of its admitted value*.

The counsel for the defendant contends that the stock having already been seized under previous executions, remained under seizure, and that no new notices were required, when seized under the last execution.

The seizure of the sheriff made under execution expires with his writ. It was so decided in *Rothschild* v. *Ramsay* (2 La. 80), the very case cited by the defendant's counsel. The first writ was issued on the 29th November, 1841, a levy on the stock was made under it, and the writ was returned *stayed*, on the 5th Monday of January, 1842. The second writ was issued 6th October, 1842, and was returned stayed by the plaintiff, on the 3d Monday of November, 1842. The third writ was issued 23d February, 1843. Seizure was made in the hands of F. B. Conrad, assignee, and was returned on the 2d Monday of April, 1843. The fourth writ, under which the stock was sold, was issued 15th April, 1843. So that from the 5th Monday of January, 1842, until April, 1843, there was no seizure or procceedings whatever existing against the stock pledged to the bank, and during a great part of the time, no writ in the sheriff's hands. Is it possible that the court can countenance the doctrine, that notices will be presumed to have been correctly given under

the one writ, and that this presumption will cure the defect of notice under another writ, issued fifteen months afterwards?

The stock never was seized. To make an effectual and valid seizure, the sheriff must take possession of the property seized. If it consist of credits or incorporeal things, possession of the title should be taken. The sheriff should take the same possession that would be necessary to complete the title of a purchaser. Civil Code, art. 2457. The certificate of stock was never taken into the possession of the sheriff, nor was it exhibited at the sale. Bidders might have been deterred from bidding for stock, the certificates of which were not shown. It may be presumed that if the certificates had been exhibited, greater confidence would have been felt in the title; that the plaintiffs would have found some competitor at the bidding; and that the property would not have been sacrificed.

*L. Pierce*, for the defendants. The Commercial Court had no jurisdiction. This suit should have been brought in the District Court. The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied. The execution of process is a part of the proceediugs in a suit. According to the regulations of the Spanish laws, on the subject of execution, when the judgment of a court has to be executed even within the jurisdictional limits of another, on opposition made to the proceedings on grounds wholly incidental to the original cause, the claims and rights of the opposers were to be decided upon by the judge who held cognizance of the principal suit.   8 Mart. 63.

The first objection made by the Insurance Company is not sustained. The minutes of the company (Deliberations of May 3d, 1839,) show that Harrod was the last president. If the subsequent proceedings of some of the stockholders were beyond their powers as members of the corporation, and the liquidating committee a nullity, which is believed, the notice was good upon Harrod. If the liquidating committee exists, as they appear in the case in the District Court, and Harrod, Hodge and Lockett were the committee, service upon Harrod was good, for notice to one of the committee was notice to all. That it was duly served upon him is proved by Heyl's testimony, who de-

poses that he always placed on the table of Harrod all papers left for him, without reading them, and the minute book shows that there was no office of business. But the plaintiffs are barred by their own proceedings in the District Court. On the 8th December, 1841, this pledged stock was seized by the sheriff, and $2,040 made besides upon the writ, which was paid to the defendants. This writ was stayed, but the seizure still continued. Under the common law a *venditioni exponas* would have afterwards issued. Under our system *alias* and *pluries fieri facias* are the common writs. This seizure of the stock, in December, 1841, is not complained of, either in the District Court, or in the present petition; and there was no necessity of notice on the *alias pluries* writ. 2 La. 280.

There is no necessity for advertisements to be made by posting on the church door or court house door. Acts of March 9, 1835, and March 11, 1837. Bullard and Curry's Dig. p. 9.

There is no law requiring the sheriff to take manual possession of the certificate of stock, nor was it necessary for the purposes of justice. The purchaser would have been entitled, on the production of the adjudication of the sheriff, to have transferred to him the 170 shares on the books of the Bank of Louisiana, and to receive a certificate in his own name, and the certificate in their possession would of course be cancelled. The certificate was annexed to the act of pledge, and whether in a notary's office, or in the cashier's acting as notary, could not be separated from the act of pledge until the ownership was changed by a *sale*.

GARLAND, J. The object of this suit is to annul and set aside a sale made by the sheriff of the District Court of the First District, of one hundred and seventy shares of the stock of the Bank of Louisiana, purchased by that institution, and to obtain a judgment decreeing the shares to belong to the plaintiff. The facts are, that the bank discounted a note for upwards of $20,000, drawn by the company, the payment of which was secured by the pledge of 170 shares of the stock of the Bank of Louisiana, and a number of shares of the Bank of Orleans. Suit was brought on the note, in the District Court, a judgment obtained, and various executions issued, under the last of which the 170 shares of stock were seized and sold by the sheriff, and purchased

by the agent of the bank. The Insurance Company now alleges that said sale is a nullity : *first*, because no legal notice of seizure was given ; *secondly*, because the property was not legally advertised ; *thirdly*, because the sheriff did not, when he sold the stock, have it or the certificate therefor in his possession, and did not exhibit it to the bidders or purchasers at the sale ; *fourthly*, because no appraisement was made of the stock previous to selling it, and because, generally, the requisitions of the law have not been complied with.

The defendants excepted to the jurisdiction of the Commercial Court, and aver that it cannot annul or set aside the proceedings of the District Court ; and further, that there is no president or directors of the Insurance Company, nor any person authorised by law to institute this suit. As the defendant's counsel was not present when this exception was tried the court over-ruled it, the judge saying, in his reasons for his judgment on the merits, that he presumed it was abandoned. The case was tried on the merits, and a judgment given for the defendants, from which the plaintiffs have appealed.

On the trial it was proved that Henry Lockett signed the note sued on, as the president, *pro tempore*, of the Insurance Company. The citation was served on him when the suit was instituted, and he does not appear even to have been superseded in that office. The notice of seizure was not served on him by the sheriff ; but the sheriff returns, that written notice of seizure was left at the office of Charles Harrod, president of the company, in the hands of Mr. Heyl, on the 12th of May, 1843. At this period it is shown that Harrod was not the president of the company, nor had he been for several years. Heyl is not shown to have been an officer of the company, nor is it pretended that he was. No advertisement was posted on the door of the church, nor of the court house ; and no appraisement was made previous to the sale.

As to the exceptions filed by the defendants, we are of opinion that the court did not err in overruling them. The first is, that the Commercial Court cannot annul or set aside the proceedings of the District Court. This is true, so far as the judicial proceedings of the latter tribunal come in question ; but it is not the case where the executory proceedings of the sheriff are set

up as the basis of a title to property claimed to have been alienated. Here the defendants set up the proceedings of the sheriff as giving them a title, and we are of opinion that the Commercial Court has power to examine them, to see if the requisites of the law have been complied with. It is an every day occurrence for courts to look into the proceedings relating to the disposition of the property composing successions, when set up as giving a title. The case cited by the counsel from 8 Martin, 63, does not sustain his position.

The second exception is rather an unfortunate one for the defendants. The president of the company, and those representing it in this action, are identically the same persons with whom the bank made their contract, and against whom they brought suit and obtained a judgment. No other president or directors seem to have been chosen since, and the charter says, that when a president and directors are once selected, they shall serve until others are elected to replace them. The corporation is not dissolved by a failure to elect directors by the stockholders. 1 Moreau's Dig. 603, sec. 6.

Upon the merits of the case we cannot agree with the judge of the Commercial Court, that the evidence establishes that Harrod was the president of the company, that his place of business was the place of business of the corporation, and that the notice of seizure came to his hands. The contrary of these positions is the true state of the case. The minute book of the company, which is in evidence, shows that Harrod resigned as president of the company, on the 29th November, 1838, and that Lockett was appointed his successor. Harrod, in 1843, had a situation and office in the Atchafalaya Bank, with which the Insurance Company had no connection, so far as we are informed. He was one of the liquidating committee, it is true, but not the principal member, or chairman. The sheriff does not say either in his return, or evidence, that he gave a notice of seizure to Harrod; on the contrary, he says it was handed to one Heyl, who never had any connection with the company, and who, when examined, does not say that he gave it to Harrod. He swears that he was employed in the Atchafalaya Bank, and that when persons came there with papers for Harrod, he laid them

on his desk, without ever looking at them.  He never saw any notice at all.  Admitting that Harrod was the proper person to whom the notice should have been given, this was not a sufficient service of it.  Code of Practice, art. 198.

We are of opinion that the notice of seizure was illegal; and the sale made under it consequently confers no title on the defendants.  There are other grounds of nullity; but it is not necessary to state or decide them.

The judgment of the Commercial Court is, therefore, annulled and reversed, and it is ordered and decreed that the sale made by the sheriff of the District Court to the defendants, of the one hundred and seventy shares of the stock of the Bank of Louisiana, be annulled and set aside, as being illegal; and that the plaintiffs recover the same, subject to the pledge in favor of the Bank of Louisiana, and the judgment in their favor, and the privilege acquired by the seizure; the appellees paying the costs, in both courts.